IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division



FILED
MAR 30 2010
CLERK, U.S. DISTRICT COURT
RICHMOND, VA

FIRST COMMUNITY BANK,

    Plaintiff

    v.                   Civil Action No. 3:09cv533

E.M. WILLIAMS & SONS, INC.,
et al.,

    Defendants.

## MEMORANDUM OPINION

This matter is before the Court on the appeal of First Community Bank, N.A., from the Bankruptcy Court's decision in First Community Bank v. E.M. Williams & Sons, Inc. (In re E.M. Williams & Sons, Inc.), 2009 Bankr. LEXIS 2325 (Bankr. E.D. Va. July 17, 2009), denying the Appellant's Motion for Reconsideration. For the reasons that follow, the decision of the Bankruptcy Court will be affirmed.

## BACKGROUND

The complex facts of the prior proceeding are described in detail in the Bankruptcy Court's initial opinion on the matter, First Community Bank v. E.M. Williams & Sons, Inc. (In re E.M. Williams & Sons, Inc.), 2009 Bankr. LEXIS 1224 (Bankr. E.D. Va. May 8, 2009), which found that a deed of trust held by First Community Bank

("First Community") was avoidable by the Trustee of the debtor's estate "pursuant to Bankruptcy Code §§ 544 and 550 and preserved for the benefit of the estate pursuant to Bankruptcy Code § 551." Id. at *20.

To summarize the facts of the case and the proceedings below with all possible brevity, Appellees Bernard and Ronnie Williams formed E.M. Williams & Sons, Partnership ("the Partnership"), and, in 2000, bought a parcel of property in Bowling Green, Virginia ("the Property") from a Mr. and Ms. Cecil. To finance the sale, the Partnership took out a mortgage, in the amount of $96,000, from Union Bank. Three years later, in 2003, the Williams Brothers incorporated, forming E.M. Williams & Sons, Inc. ("the Corporation"). Two years after incorporating, the Corporation executed a promissory note in favor of the Appellant, First Community, on May 31, 2005, in the amount of $200,000, the proceeds of which were used to pay off the Union Bank mortgage, and otherwise reduce the Corporation's debt. This deed of trust was recorded on June 2, 2005, indicating that the Corporation held legal title to the property. In fact, the Corporation never had legal title to the property, which remained in the Partnership (which was not a party to the deed of trust executed for the

Appellant's benefit), although the Bankruptcy Court later found the Corporation to have equitable title.

In January 2008, the Corporation filed, voluntarily, for Chapter 7 bankruptcy,[1] listing the Property in its schedule of assets, along with First Community's deed of trust as a secured claim. Because all parties with knowledge this deed of trust secured First Community's claim to the property, the Trustee indicated his intent to abandon the property pursuant to § 554(a) of the Bankruptcy Code. When First Community attempted to foreclose on the Property, however, it realized that the Corporation did not have legal title to the property when the deed of trust was executed. First Community then abandoned its foreclosure efforts and initiated the action that is the subject of this appeal, against the Corporation, the Partnership, the brothers as individuals, and the Trustee of the debtor Corporation's estate. In response to First Community's action, the Trustee counterclaimed to avoid First Community's deed of trust and gain title to the Property for the benefit of the estate.

After the issues were fully briefed, and upon request of the parties that the issue be decided on the briefs, an initial opinion was issued on May 8, 2009, which made the

---

[1] The Partnership did not file for bankruptcy.

following findings. First, the Debtor's equitable interest in the Property allowed the Trustee to pull that interest into the estate pursuant to § 541(a)(1). Second, pursuant to §§ 542-43, the Trustee, having an equitable interest in the Property, was entitled to pull the legal interest into the debtor Corporation's estate by transfer of the deed from the Partnership. Third, by operation of Va. Code § 55-52, the deed of trust that the Corporation conveyed to First Community in 2005, when the Corporation held only equitable title, became legally enforceable valid once legal title vested in the Corporation post-petition.

Fourth, however, First Community's deed of trust, its legal validity notwithstanding, was avoidable by the Trustee under his strong-arm powers (§ 544) because the deed of trust lay outside the chain of title. A bona fide purchaser of the Property from the Partnership, the legal titleholder, never would have seen in a title search the Deed of Trust which was executed by the Corporation. Thus, the Bankruptcy Court held that, because a bona fide purchaser of the Property from the Corporation would have taken title to the Property free and clear of the deed of trust under Virginia law, the Trustee may similarly take title free and clear.

Fifth, the Trustee's earlier announcement of his intent to abandon the property, made under a material misapprehension of fact, did not preclude the Trustee from bringing the Property into the estate after he discovered his ability to avoid First Community's deed of trust.

In wrapping up its opinion, the Bankruptcy Court provided a succinct synopsis of its conclusions:

> (1) the Debtor was the owner of the equitable title to the Real Property as of the Petition Date; (2) upon the commencement of the Debtor's bankruptcy case, the Trustee succeeded to that equitable interest in the Real Property; (3) as the Partnership holds only bare legal title to the Real Property, the Trustee is entitled to receive a deed to the Real Property as of the Petition Date; (4) the Trustee may avoid any transfer of property of the Debtor that is avoidable by a bona fide purchaser of real property from the Debtor; (5) as such, the Trustee is charged with the knowledge of record title to the Real Property as of the Petition Date; (6) the 2005 Deed of Trust was outside the chain of record title to the Real Property; and (7) as a result, the 2005 Deed of Trust is avoidable and has been avoided pursuant to Bankruptcy Code §§ 544 and 550 and preserved for the benefit of the estate pursuant to Bankruptcy Code § 551.

E.M. Williams & Sons, 2009 Bankr. LEXIS 1224, at *20. The Bankruptcy Court entered an order memorializing those findings on May 8, 2009, granting judgment for the Trustee on his counterclaim and dismissing First Community's claims.

Rather than appeal the May 8, 2009 entry of judgment, First Community moved the Bankruptcy Court to reconsider

its decision upon two grounds. First, contended First Community, the doctrine of equitable subrogation (which was not raised by First Community in the earlier proceeding) required that First Community be subrogated to the rights of Union Bank, who received the proceeds of First Community's deed of trust; this subrogation would prevent the Trustee's "unjust enrichment" at First Community's expense. Second, asserted First Community, because the Trustee abandoned the Property, and because abandonment is irrevocable, the Trustee should not have been able to pull the Property into the estate after previously disowning it.

After First Community's motion for reconsideration was fully briefed, the Bankruptcy Court considered and denied the motion, in an order entered July 17, 2010, for reasons explained in a second Memorandum Opinion, First Community Bank v. E.M. Williams & Sons, Inc. (In re E.M. Williams & Sons, Inc.), 2009 Bankr. LEXIS 2325. As to the equitable subrogation argument, the Bankruptcy Court observed that the argument was not properly before the court, because there was no reason First Community could not have raised that argument in the initial proceeding, and because First Community could not show that "manifest injustice," Hutchison v. Staton, 994 F.2d 1076, 1081 (4th Cir. 1993), would result from the court's initial decision. Even if

the issue were properly raised, noted the Bankruptcy Court, the Trustee's § 544 strong arm powers would allow him to avoid a lien arising from equitable subrogation just as the Trustee avoided First Community's legally valid deed of trust. The Bankruptcy Court dismissed First Community's abandonment-related argument, because it was fully considered and rejected in the initial decision, and First Community had given no valid reason why a different conclusion should obtain on reconsideration. <u>E.M. Williams (Reconsideration)</u>, 2009 Bankr. LEXIS 2325, at *2 n.2.

Following the denial of its reconsideration motion, First Community filed its notice of appeal from the Bankruptcy Court's order of July 17, 2009. All but one of the issues that First Community raised, however, related to the order entered on May 8, 2009, from which First Community had not taken an appeal.[2] Observing this discrepancy, this Court ordered First Community, on October 20, 2009 (Docket No. 9), to "show cause why the Statement of Issues and the briefs currently on file should not be stricken and why the parties should not be required to file

---

[2] First Community did challenge the Bankruptcy Court's finding respecting whether the Trustee effectively abandoned the property, which was the subject of its motion for reconsideration that was denied on July 17, 2009. However, the other issues raised in First Community's original statement -- whether Virginia law prohibits the trustee from taking the Property free and clear, and whether the Trustee's rights trumped First Community's unperfected lien, were not related to the Bankruptcy Court's denial of the motion for reconsideration, from which First Community appealed.

a new Statement of issues and new briefs confined to the issues presented by the order from which the appeal was noted."

Rather than brief the issue of cause, First Community stated that it "has no objection to the requirements ordered by the Court," and that it would "therefore file a new Statement of Issues no later than November 6, 2009." First Community did so, then filed its opening brief on November 24, 2009, to which the Trustee responded on December 09, 2009, and First Community replied on December 18, 2009.

First Community's new statement of issues, filed on November 6, 2009, is limited to two issues: (1) "Whether the Bankruptcy Court erred in ruling that the Trustee became entitled to the Real Property free and clear of the 2005 Deed of Trust that the debtor conveyed for the benefit of the Plaintiff (Appellant) because it fell outside of the chain of title;" and (2) "Whether the Bankruptcy Court erred in ruling that the Trustee may avoid the equitable lien that resulted from the Plaintiff's (Appellant's) subrogation to Union Bank's lien position because the Union Bank deed of trust was released and was no longer part of the record chain of title."

Furthermore, even though First Community did not note the May 8, 2009 order in its notice of appeal, nor did it file a notice of appeal within ten days of the May 8, 2009 Order, First Community asserts, in its opening brief, that it is appealing *both* the May 8, 2009 Order, and the July 17, 2009 Order.

## II. APPLICABLE LAW

A district court conducts *de novo* review of the Bankruptcy Court's legal conclusions, but accepts the Bankruptcy Court's factual findings unless they show clear error. GMAC v. Horne, 390 B.R. 191, 196 (E.D. Va. 2008) (citing Butler v. David Shaw, Inc., 72 F.3d 437, 440 (4th Cir. 1996)). First Community does not take issue with the facts found by the Bankruptcy Court, challenging, instead, only its legal conclusions.

A motion for reconsideration in Bankruptcy Court is made pursuant to Bankruptcy Rule 9023, which states that Fed. R. Civ. P. 59 applies in bankruptcy cases, and pursuant to Bankruptcy Rule 3008, which specifically recognizes motions to reconsider. See, e.g., In re Enron Corp., 352 B.R. 363, 367 (Bankr. S.D.N.Y. 2006). Under Fourth Circuit law, reconsideration motions are proper in only three circumstances: (1) an intervening change in controlling law; (2) the emergence of previously

unavailable evidence; or (3) "to correct a clear error of law or prevent manifest injustice." E.M. Williams (Reconsideration), 2009 Bankr. LEXIS 2325, at *5-7 (quoting Hutchinson, 994 F.2d at 1081). Motions for reconsideration allow "a district court to correct its own errors, 'sparing the parties and the appellate courts the burden of unnecessary appellate proceedings,'" Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co., 148 F.3d 396, 403 (4th Cir. 1998) (citations omitted). They "may not be used, however, to raise arguments which could have been raised prior to the issuance of the judgment, nor may they be used to argue a case under a novel legal theory that the party had the ability to address in the first instance." Id.

Bankruptcy Rule 8001 specifies the procedures for appealing a decision of the Bankruptcy Court to district court. The Rule identifies that the notice of appeal must identify the parties to the judgment from which the appeal is taken, although it does not specifically require the party to identify the judgment itself.[3]

---

[3]     See United States v. Arkison (In re Cascade Rds.), 34 F.3d 756, 761 (9th Cir. 1994) ("Unlike [Fed. R. App. Proc.] 3(c), Rule 8001(a) does not require that notices of appeal to the district court 'designate the judgment, order or part thereof appealed from.' Rather, the bankruptcy rule requires only that a notice 'contain the *names* of all parties to the judgment, order, or decree appealed from.'") (emphasis in original).

## III. DISCUSSION

Although Bankruptcy Rule 8001 did not require it to do so, First Community did indicate, in its record designation, the underlying judgment from which it took an appeal: the July 17, 2009 Order denying its motion to reconsider. And, when the Court ordered First Community to show cause why the appeal should not be confined to the issues in the July 17, 2009 Order, First Community stated that it had "no objection to the requirements ordered by the Court," thereby accepting the Court's suggestion that its appeal should be confined to the issues raised in the motion for reconsideration. Thus, arguments that First Community did not present in its motion for reconsideration will not now be considered on appeal.

If First Community wished to contend that it should be allowed to appeal issues adjudicated on May 8, 2009, First Community had the opportunity to do so in response to the October 20, 2009 Order to Show Cause. However, First Community did not so respond. Nor did First Community seek to amend its notice of appeal to indicate an intent to appeal the May 8, 2009 Order. First Community chose merely to note, in its opening appellate brief, that it appealed the May 8, 2009 Order. That statement contradicts First Community's notice of appeal and its acceptance of the

11

Court's "requirement" that the issues be limited to those raised in the motion to reconsider. Given all of the circumstances, it is proper to consider only the issues relating to the July 17, 2009 Order, and only to the extent that those issues are identified in First Community's notice of appeal.

The first issue that First Community raises on appeal, "[w]hether the Bankruptcy Court erred in ruling that the Trustee became entitled to the Real Property free and clear of the 2005 Deed of Trust that the debtor conveyed for the benefit of the Plaintiff (Appellant) because it fell outside of the chain of title," is not properly before the Court. As phrased, it is exceedingly broad, encompassing all seven of the Bankruptcy Court's explicit findings in its Order of May 8, 2009. It is briefed somewhat more narrowly, as a question of the application of Virginia law to the definition of a "bona fide purchaser," which informs the Trustee's strong-arm powers under 28 U.S.C. § 544.

The foremost defect respecting this issue is that First Community did not assert the argument it now raises on appeal in its motion for reconsideration, which was limited to the two discrete issues of equitable subrogation and abandonment. Because First Community did not appeal from the May 8, 2009 Order, but only from the July 17, 2009

Order denying the motion for reconsideration, and because First Community agreed to limit its appeal to those issues raised in its motion for reconsideration, First Community may not raise the issue now.

The second issue that First Community raises on appeal is "[w]hether the Bankruptcy Court erred in ruling that the Trustee may avoid the equitable lien that resulted from the Plaintiff's (Appellant's) subrogation to Union Bank's lien position because the Union Bank deed of trust was released and was no longer part of the record chain of title." It is also improper to consider this argument because First Community waited until its motion for reconsideration to raise the argument. E.M. Williams (Reconsideration), 2009 Bankr. LEXIS 2325, at *5-7. Although First Community implicitly argued the "manifest injustice" prong of Hutchison as justification for raising this issue for the first time in its reconsideration motion, it produced no analogous cases, nor has research revealed any, in which a reconsideration motion was granted to avoid "manifest injustice" in circumstances such as those presented here. First Community cannot claim that it filed the motion for reconsideration to give the Bankruptcy Court an opportunity to correct an earlier error, because First Community did not give the Bankruptcy Court the opportunity to rule on

the argument in the initial proceedings. Because the argument was improperly raised to the Bankruptcy Court for the first time in First Community's reconsideration motion, it is no more proper for the Court to consider it on appeal.

## IV. CONCLUSION

For the foregoing reasons, the decision of the Bankruptcy Court will be affirmed.

It is so ORDERED.

_____/s/_____ *REP*

Robert E. Payne
Senior United States District Judge


Richmond, Virginia
Date: March 29, 2010